### RUTH *v.* VROOM.

1. APPEAL AND ERROR—JUDGMENT NON OBSTANTE.

> On review of judgment entered for defendants notwithstanding verdict for plaintiff, the testimony most favorable to plaintiff must be accepted.

2. MOTOR VEHICLES—NEGLIGENCE—RATE OF SPEED AT NIGHT.

> It is negligence as matter of law to drive an automobile at night at such speed that it cannot be stopped within the distance that objects can be seen ahead of it.

3. SAME—DUTY OF DRIVER BLINDED BY LIGHTS.

> If an automobile driver's vision is obscured by the lights of an approaching car, it is his duty to slacken speed and have his car under such control that he can stop immediately if necessary.

4. EVIDENCE—MATTER OF COMMON KNOWLEDGE.

> It is matter of common knowledge that many headlights are blinding to on-coming drivers, especially and increasingly as the cars near each other.

5. MOTOR VEHICLES—CONTRIBUTORY NEGLIGENCE—IMPUTABLE NEGLIGENCE—DIRECTED VERDICT.

> The driver of an automobile, who, blinded by the headlights of an approaching automobile, continued on his way and crashed into the rear end of an unlighted trailer standing on the pavement, was guilty of contributory negligence as matter of law, so that a passenger, to whom the negligence of the driver is imputable, is barred from recovering for injuries sustained in the crash.

Error to Calhoun; North (Walter H.), J. Submitted October 18, 1928. (Docket No. 136, Calendar No. 33,672.) Decided December 4, 1928.

Case by Nettie Ruth against Henry Vroom and Peter Vroom, copartners as Vroom & Son, and

Speed of automobile as evidence of negligence, see annotation in 25 L. R. A. (N. S.) 40; 38 L. R. A. (N. S.) 488; 51 L. R. A. (N. S.) 993.

Fact that driver of automobile is blinded by glare of light as affecting liability for automobile accident, see annotation in 10 A. L. R. 294; 32 A. L. R. 887; 41 A. L. R. 1040.

another for personal injuries. Judgment for defendants *non obstante veredicto.* Plaintiff brings error. Affirmed.

*John F. Henigan,* for appellant.

*C. C. Coulter* and *James Cleary,* for appellees.

FEAD, C. J. Between 2 and 3 o'clock a. m., October 13, 1924, a Maxwell touring car, driven by Fay White, and in which plaintiff was riding, crashed into a trailer attached to a Federal truck owned by defendants Vroom, and plaintiff was severely injured. She had verdict against both defendants in action for damages. Judgment for defendants notwithstanding verdict was entered by the court on reserved motion, on the ground of White's contributory negligence, imputable to plaintiff. Plaintiff has brought error and the testimony most favorable to her must be accepted.

White, plaintiff, two other men, two other women, and three children drove from Jackson to Detroit Sunday evening, October 12th, arriving about 10 o'clock p. m. They started on the return trip after 11 o'clock, the two men riding in the front seat with White and the three women in the back seat, holding the children on their laps. They went through Ann Arbor about 2 o'clock and the accident occurred some 8 miles west.

The Federal truck, with two trailers, facing west, was standing on the pavement on the right side. The truck was under a tree. The east trailer had no rear lights and was slanted somewhat so its east end touched or crossed the center line of the highway. The lights on the truck and other trailer could not be seen from the east.

It was a clear night, quite light. White approached from the east at a speed of 30 miles per hour. When 400 or 500 feet east of the truck, he came to the crest of a grade sloping slightly down toward the west. He then saw the headlights of a Reo speedwagon, owned by defendant Hall, either standing or coming from the west. White dimmed his lights, reduced his speed to 15 or 20 miles per hour and continued at that rate until he put on his emergency brake to avoid a collision. At that speed he could have stopped his car in 15 feet. He could see about 50 feet ahead of the car with his lights dimmed. The Reo lights bothered him some but not enough that he could not have stopped within the range of his vision. He drove to a point distant from the truck, according to various estimates of White, 15, 30, 40, 50, or 66 feet. At that point the Reo lights, which had a defective lens, blinded him, causing what he termed a "black spot," in which he could not see ahead. He ran some 10 feet in the black spot. At some time therein, when he realized he could not see, he applied the emergency brake, ran out of the black spot and saw the trailer 12 feet away. At that time the Reo speedwagon had just passed the trailer by three or four feet, and White steered his car to the left for the opening. His car skidded about 12 feet. He struck the rear left side of the trailer.

It is settled in this State that it is negligence as a matter of law to drive an automobile at night at such speed that it cannot be stopped within the distance that objects can be seen ahead of it; and, if a driver's vision is obscured by the lights of an approaching car, it is his duty to slacken speed and have his car under such control that he can stop immediately if necessary. *Budnick* v. *Peterson*, 215

Mich. 678; *Spencer* v. *Taylor,* 219 Mich. 110; *Gleason* v. *Lowe,* 232 Mich. 300; *Holsaple* v. *Sup'ts of Poor of Menominee Co.,* 232 Mich. 603; *Lett* v. *Summerfield & Hecht,* 239 Mich. 699.

Plaintiff contends that White, in being blinded by the Reo lights, was confronted by an unusual condition, an element of surprise, something which he had never met before in his 10 years' experience in driving; that an emergency was thus created, White acted promptly and with due diligence in endeavoring to stop the car as soon as he realized he could not see ahead, and his negligence was a question for the jury under *Diederichs* v. *Duke,* 234 Mich. 136. The latter case is plainly distinguishable. There the plaintiff made timely discovery of the danger, applied the brakes in time to stop and would have stopped in time had not the car slipped on an undiscernible strip of icy pavement.

The rule adopted by this court does not raise merely a rebuttable presumption of negligence. It is a rule of safety. *Lett* v. *Summerfield & Hecht, supra.* It is not enough that a driver be able to begin to stop within the range of his vision, or that he use diligence to stop after discerning an object. The rule makes no allowance for delay in action. He must, on peril of legal negligence, so drive that he can and will discover an object, perform the manual acts necessary to stop, and bring the car to a complete halt within such range. If blinded by the lights of another car so he cannot see the required distance ahead, he must, within such distance from the point of blinding, bring the car to such control that he can stop immediately, and, if he cannot then see, shall stop.

Emergencies not to be fairly anticipated may vary the application of the rule. But no such emergency

was present at bar. The truck and trailer had been stationary several minutes and White had seen the undimmed lights of the Reo car several hundred feet away. It is a matter of common knowledge that many headlights are blinding to on-coming drivers, especially and increasingly as the cars near each other. Accidents due to their glare are frequent. A prudent person would reasonably have anticipated that the lights might interfere with his view ahead. When cars meet at night each driver must antici-pate the possibility of interference with his vision by the headlights of the approaching car, and, if he cannot see the road beyond such car, must have his own automobile under control which will enable him to stop immediately, or within such distance as he can at all times see ahead. White did not stop within such range.

Moreover, whichever of White's variable esti-mates of distance is accepted, his negligence ap-pears. Able to see 50 feet ahead and the Reo lights not appreciably interfering with his vision, if he ran into the black spot within that distance of the trailer, he should have seen it before entering such black spot. If he was so far away that he could not see the trailer when he entered the black spot, he had ample space within which to stop after he knew he could not see ahead.

Judgment is affirmed.

FELLOWS, WIEST, CLARK, McDONALD, POTTER, and SHARPE, JJ., concurred. NORTH, J., did not sit.